OSTERBERG et al. v. RECTOR, ETC., OF TRINITY CHURCH IN THE CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   February 7, 1902.)

1. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—EVIDENCE—SUFFICIENCY.
    Evidence, in an action for breach of contract employing plaintiff as consulting engineer, considered, and *held* insufficient to show a valid contract of employment, but only an unaccepted offer, by plaintiff to enter into such contract.

2. APPEAL—QUESTIONS CONSIDERED.
    Where the question of error in allowing a recovery on an issue not presented by the complaint is not raised by an appeal by defendant, whose answer admits a liability on such issue, it will not be considered on plaintiff's appeal.
    Laughlin, J., dissenting.

Appeal from trial term, New York county.

Action by Max Osterberg and another against the Rector, Churchwardens and Vestrymen of Trinity Church in the City of New York. From a judgment in favor of the defendant, plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

John S. Melcher, for appellants.
Flamen B. Candler, for respondent.

INGRAHAM, J.   The complaint alleges that the defendant retained and employed the plaintiffs as consulting engineers to supervise the general engineering work in connection with and required by the improvement of certain premises owned by the defendant, including the preparation of plans and specifications for the construction and installation of an electric plant, and the supervision of the same, and, in connection therewith and preliminary thereto, to investigate the report upon the electric plant then in existence and operation upon the said premises; that subsequent to such employment the defendant notified the plaintiffs in writing that the defendant would not require their services as electrical engineers in

connection with the buildings upon the said premises, and refused, and still refuses, to allow the plaintiffs to continue work under their said contract; that the usual and customary fee or compensation of consulting engineers in the city of New York for the preparation of plans and specifications for and the supervision of the construction of buildings or electric plants such as the defendant proposed to erect on the said premises is 5 per cent. upon the total contract price for the complete construction of the same; that the total contract price for the construction of the said electric plant will be about the sum of $80,000, and the plaintiffs' damages for the breach of said contract by the defendant amount to the sum of $4,000. The defendant denied making the contract with the plaintiffs, but alleged that prior to the commencement of this action the plaintiffs were employed by the defendant to make a certain examination in respect to the amount of electricity used by the Garvin Machine Company in a building occupied by said company and belonging to the defendant, for which services the defendant has always been, and is now, ready and willing to pay the plaintiffs a reasonable sum. Upon a trial of the action the court held that the plaintiffs had failed to prove a contract such as that alleged in the complaint, but that plaintiffs were employed in respect to the work on the Garvin Building, that the complaint was broad enough to allow a recovery for the services performed under such a contract, and submitted the question to the jury as to the value of the services rendered by the plaintiffs in the Garvin Building; and the jury found a verdict for the plaintiffs for $250, for which judgment was entered. The plaintiffs appeal from that judgment as insufficient.

The contract, as alleged in the complaint, contemplated the supervision by the plaintiffs of the electrical work required by the improvement of the defendant's premises, including the preparation of the plans and specifications for the construction and installation of the electric plant, and, in connection therewith and preliminary thereto, to investigate and report upon the electric plant then in existence and operation upon the said premises. The services that were performed by the plaintiffs under the employment are alleged to be consultation with officers and employés of the defendant, the examination of the said electric plant and of its efficiency, and the preparation of a report thereupon as to the cost and efficiency of the proposed new electric plant, and the preparation of preliminary plans and specifications therefor, and the obtaining of estimates from divers manufacturers for the manufacture and supply of the electrical apparatus, boilers, engines, and other machinery necessary therefor. There is no allegation that the plaintiffs actually made plans and specifications for the construction and installation of the electric plant, or supervised the construction of the same. The plaintiffs, not having actually performed the contract, would not be entitled to recover the full contract price, as a recovery for the contract price could only be allowed upon the performance of the services to be rendered by the plaintiffs under the contract. If,

however, they proved a contract to perform all the services speci-
fied, they would be entitled to the damages sustained by reason
of the refusal of the defendant to allow them to perform it, and to
have that question submitted to the jury. The question, therefore,
is whether the plaintiffs proved that a contract as alleged in the
complaint had been made, and a breach of such a contract by the
defendant.

Mr. Osterberg, one of the plaintiffs, who was called as a witness
to prove the contract, testified that in consequence of a verbal
message which purported to come from the defendant, received by
him in June, 1898, he called at the office of the defendant, and had
a conversation with Col. Cruger; that Col. Cruger explained to the
witness that the defendant had certain property in Varick street
upon which it intended to erect a set of buildings, and states that
the defendant had already erected a building called the "Garvin
Machine Works" upon a part of said premises, upon which had been
installed certain electrical machinery, but it would seem that such
machinery had not been entirely satisfactory, consuming much
more power than was expected; he therefore requested the plaintiff
"to make an investigation to find out where the loss came in, if
there was any, and, if there was no loss, where the power was being
consumed"; stating that the corporation intended to build these
other buildings in that neighborhood, and that the plant as laid out
in the Garvin Machine Works should form the basis of transmis-
sion to the other stores; that he (Col. Cruger) wished the plaintiff
to meet a Mr. Hall, a consulting engineer, on the following day,
to go through the Garvin Machine Works, to show what work had
been done there, and to show the plaintiffs the property upon which
the new building was to be erected. The witness further testified
that he met Mr. Hall, and went through the Garvin Building, and
had a general discussion with him as to the requirements of the
manufacturing establishments on the block; that the same day he
again saw Col. Cruger, and stated that he had been through the
buildings with Mr. Hall, and had investigated and inspected the
location of the present power house and the proposed new build-
ings, and that Mr. Cruger told him to make a report for him for his
own convenience; that Cruger then asked the witness about the
terms under which he would work; that he told Cruger that he
would work on two different bases:

"I either worked on a percentage basis, which is five per cent. of the total
cost of the entire work, or on a regular fixed sum for the entire piece of work,
which latter, however, I could not determine, as far as the figures were
concerned, because I had no idea of the amount of work which was to be
done and the amount of machinery to be installed; and then he asked me
whether there was any special form of contract which engineers usually
entered into, and I told him that in general and in a good many cases I
have no contract at all with my clients, but that it was immaterial to me
whether I made one or not. He told me that the corporation generally
always made contracts in writing, and for that purpose I should come
back on Friday and see him in the vestry room, where he would have
Mr. Cammann meet me; and I told him then I would give him the report,
which I wanted him to consider not entirely official, because as far as the

figures were concerned I could not possibly have time to go into very considerable detail in those three days. I then left. \* \* \* He [Cruger] told me that he wanted me to attend to the electrical work very definitely, but that he could not say at that time whether I would have anything to do with the steam engineering work, because he did not know but what Mr. Hall, who had been their consulting engineer, would continue in that duty and in charge of that part of the work."

This was on Tuesday, and the witness testified that he devoted the next two days, Wednesday and Thursday, practically to the preparation of a report, in which he made a rough calculation of the power consumed, and tried to determine the points which were necessary—the foundation points necessary—to lay out a large section of plant for such a set of buildings, and the witness wrote a report bringing out those principal points, not in exact detail, but approximately. Mr. Cruger died suddenly, on Thursday; and on Friday the witness went to the defendant's office, and met Mr. Cammann and Mr. Caswell.

Mr. Cammann was then called as a witness, and testified that he was a vestryman of Trinity Church, and was such on the 24th day of June, 1898; that he subsequently, and in December, 1898, became controller of the corporation, in the meantime discharging the duties of acting controller under a resolution of the vestry. The plaintiff (Osterberg) was then recalled, and testified that he saw Mr. Cammann, and said to him that it was not his intention to come on that day on account of carrying out the contract which Mr. Cruger had asked him to come for; that he had brought his preliminary report, which he would give to Mr. Cammann, under the circumstances, for his approval; that Mr. Cammann then stated that he was not familiar with the details of Cruger's work, and desired to meet the witness on the premises, and go over the ground with him, and that he did go over the various conversations which he had had with Cruger on the Monday and Tuesday that he had before testified to; that he then made an appointment to meet Mr. Cammann upon the premises, and that he then delivered to Mr. Cammann the written report that he had prepared; that subsequently the witness had received the report back from Mr. Cammann, and that report was introduced in evidence. This report discussed the new plant to be erected upon the premises, and made suggestions as to the buildings and machinery. The witness testified that he subsequently met Mr. Cammann upon the premises upon which the new building was to be erected, and made suggestions as to the location of the power house and the other buildings; that Mr. Cammann told him to "go ahead and continue on my report, and also to start at once on the Garvin Machine Works, and give him a report of them as soon as I possibly could"; that the witness had another interview with Mr. Cammann in regard to the general layout of the new work; that Mr. Cammann showed him the plans which had been prepared by some one, giving the approximate location of the power house and the general distribution, and Mr. Cammann then spoke to the witness about the terms of payment. The witness testified:

"I told him at that time that the conversation which I had had with Col. Cruger was to the effect that my engagement was on a five per cent. basis, or that I would make a fixed price after I could form a basis of opinion of what the value of the work would be for the total amount which was to be done. I also mentioned to him at that time that Col. Cruger wanted me to meet him Friday, the 24th, the day after Col. Cruger died, to make a contract with me in writing, and to introduce me to Mr. Cammann, and that, of course, that was first; and Mr. Cammann asked me then to give him in writing a proposition based on the better knowledge which I had then, under what conditions—for how much—I would do that particular work in connection with the engineering of the new buildings. That was about all. I wrote a letter to the corporation in accordance with that request, either that day or the day after."

This letter was introduced in evidence. It was dated June 28, 1898, and contained two propositions: First, that the defendant might retain the plaintiffs under regular engineers' fee of 5 per cent. on the total contract work to be given out for the engines, dynamos, piping, heating, wiring, and construction work of the power house. "Regarding the investigations carried on in connection with the Garvin Works, we will in that case charge only $20 per week (the salary of our superintendent)." Second, that the plaintiffs would be pleased to receive "your official appointment as consulting engineers for the corporation at a fixed salary of $2,000 per year, with 1% in addition for plans, specifications, and supervision of contracts; in that case the services of our superintendent would be practically at your disposal all the time for such investigations as we are about to make in the Garvin Building,"—the letter ending, "Trusting that either one of these propositions will meet with your approval, we remain," etc. It does not appear that the plaintiffs heard anything more from the defendant until August 4th, when Mr. Cammann, as acting controller, wrote to the plaintiffs as follows:

"In consequence of some changes that we have made in connection with buildings on Hudson, Spring, and Vandam streets, we shall not require your services as electrical engineers in connection with said work. When you have completed your examination of the amount of electricity used by the Garvin Machine Co., will you be kind enough to make your report, and send in statement of your account?"

It must be quite apparent that there was here no definite contract for the employment of the plaintiffs as engineers to prepare the plans and specifications and superintend the erection of this electrical plant. The nature of the employment was left indefinite as to whether it was to be a contract for this specific work, as alleged in the complaint, or an employment by the year as consulting engineer. That such was the plaintiffs' understanding of the condition of the negotiation is apparent from the letter of June 28th, when they say:

"As per request, we take pleasure in proposing different forms of contract which we would like to enter into with your honorable body in connection with consulting engineering work for which we have been retained."

Here was a distinct proposal to make a contract, not a statement that one had been already made, and the alternative forms which were proposed plainly indicate that neither the one nor the other had been definitely agreed to. That the plaintiffs had been asked to examine the question in relation to these buildings was quite apparent, but that such an examination was merely preliminary to the making of a definite agreement as to the services that the plaintiffs were to render, and the terms and conditions of their employment, is clearly indicated by all the correspondence, as well as by the testimony of Mr. Osterberg, one of the plaintiffs. The utmost that can be said was that Mr. Cruger had intimated a desire that the plaintiffs should have charge of this work, but the terms and conditions upon which they should be employed, whether for this particular piece of work, or as consulting engineers at an annual salary, was left unsettled, to be determined when the written contract which was contemplated from the beginning was finally executed. There is no evidence that Col. Cruger, as controller of the corporation, had authority to make any definite contract with the defendant or that he assumed such authority. The plaintiffs were given express notice by Cruger that the corporation required a written contract, and the date was fixed on which that written contract should be made. Until that time there was no definite contract as to the plaintiffs' connection with the new building. The minds of the parties never met as to a definite employment. We think, therefore, that the cause of action, as alleged in the complaint, was unproved. The action is not to recover for the value of services rendered, but for a breach of an express contract by which the plaintiffs were to be employed as consulting engineers to prepare the plans for the new plant to be installed in the new buildings, and to superintend the construction of such new plant. No such contract was ever made, and no such services were ever performed. The plaintiffs' cause of action, therefore, failed in its entirety.

The defendant in its answer alleged and admitted that it had employed the plaintiffs to make certain investigations and report in relation to the electrical work in the building then in existence, and that they had performed those services, and the court hold that, upon that allegation in the answer, the amount to which the plaintiffs were entitled for their services rendered under that employment could be ascertained. As the defendant does not appeal from the judgment entered on a verdict of the jury determining the value of the services actually performed, the question as to whether or not the court was justified, under the circumstances, in allowing a recovery by the plaintiffs for a distinct and different cause of action from that alleged in the complaint, is not necessary to be determined; but upon the record as it stands the plaintiffs certainly cannot object that the court allowed a recovery upon a cause of action not set out in the complaint, and which was based upon an entirely different employment from that upon which the plaintiffs based their right to recover. The contract alleged in the complaint

.not having been proved, the court was entirely right in refusing to allow the plaintiffs to recover for a breach of that contract.

It follows that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON and HATCH, JJ., concur. LAUGHLIN, J., dissents.